In the matter of the Application of the COMMON COUNCIL OF THE CITY OF AMSTERDAM, to take lands for the extension of Grove and Jay streets.

Under the provision of the charter of the city of Amsterdam (§ 90 chap. 131, Laws of 1885) requiring the commissioners appointed to ascertain the damages caused by a street improvement to assess the same on the real estate and against the persons benefited thereby, the authority given is not limited to an assessment upon lands bordering on the street, any real estate within the city limits benefited, is by that fact alone made liable to assessment.

The charter makes sufficient provision for notice and opportunity to be heard to parties assessed to comply with the constitutional requirements.

The validity of such a statutory provision depends, not on the time or mode of notice directed but upon the fact that it is directed and furnishes an effective opportunity to be heard.

*Stuart* v. *Palmer* (74 N. Y. 184); *Remsen* v. *Wheeler* (105 N. Y. 579); *Spencer* v. *Merchant* (100 N. Y. 585; 125 U. S. 356); *People* v. *Turner* (117 N. Y. 227), distinguished.

*Matter of City of Amsterdam* (55 Hun, 270), reversed in part.

(Argued March 9, 1891; decided April 14, 1891.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, made December 28, 1889, which affirmed in part and reversed in part an order of Special Term which set aside and vacated an assessment made by commissioners appointed in the above entitled proceeding, appraising and assessing damages on extending Grove and Jay streets in the city of Amsterdam, and referred the matter back to said commissioners for further hearings and assessments.

The facts, so far as material, are set forth in the opinion.

*Edward J. Maxwell* for appellants.   The objection that the provisions of the charter are unconstitutional, is not tenable. Private property is not, therefore, taken for public use without just compensation, or without due process of law.   (Const. N. Y. art. 1, § 36; *People ex rel.* v. *Mayor, etc.*, 4 N. Y. 419; *Brewster* v. *City of Syracuse*, 19 N. Y. 116; *Litchfield* v. *Vernon*, 41 N. Y. 123; *People ex rel.* v. *Lawrence*, id. 137, 141; 2 Dillion on Mun. Corp. §§ 738, 752; *Owners* v. *City of Albany*, 15 Wend. 374; *People ex rel.* v. *Bd. Suprs.*, 70 N. Y. 228; *In re DePeyster*, 80 id. 672; *Spencer* v. *Merchant*, 100 id. 585.)   The vital question is not what provision the statute makes for notice, but whether notice is given.   (Lewis on Em. Domain, 367; 5 Ohio St. 140; Mills on Domain, 94–96; *Curry* v. *Sterling*, 15 Ill. 320; *Stuart* v. *Palmer*, 74 N. Y. 188.)

*Z. S. Westbrook* for respondent.   Unless the charter gave the parties assessed in this proceeding the right to notice and an opportunity to be heard before the commissioners who imposed the assessment, such assessment is illegal and void. (*Stuart* v. *Palmer*, 74 N. Y. 184; *Spencer* v. *Merchant*, 100 id. 585; *Happy* v. *Mosher*, 48 id. 318; *People* v. *Turner*, 117 id. 237.)   There is no legal proof in the case that any one of the parties assessed would be specially benefited by the laying out of the proposed street.   (43 N. Y. 279; 2 N. Y. 514; *McNutt* v. *Johnson*, 7 Johns. 18; *Squire* v. *Gould*, 14 Wend. 159.)

Finch, J.   The Special Term, upon the motion to confirm the commissioners' report, awarding damages and assessing benefits for the extension of Grove and Jay streets, in the city of Amsterdam, had before it two classes of property owners objecting to the confirmation: one class consisting of persons whose lands had been taken for the improvement, and the other of persons assessed for benefits whose property was situated upon outlying streets, not immediately or directly connected with Grove or Jay streets, or their proposed extension.   Mrs. Dickson, whose land was taken, objected to the

sufficiency of the award of damages, as did also Mrs. Nolan. The former raised the question of the constitutional validity of the act. All the other parties appearing were owners upon the outlying streets, and they also raised the constitutional question. The Special Term, however, held that as to these last objectors there was no sufficient proof that their property was specially benefited by the improvement. That court had before it the maps used by the commissioners, which are not before us, and its determination as to the facts, apparently approved by the General Term, and certainly not reversed by its judgment, should be deemed satisfactory and close that question on this appeal.

The Special Term also held that the section of the city charter under which the improvement was ordered did not authorize assessments for benefits upon property not lying on the extended streets; and the order which the court made while affirming the order of the commissioners as to the damages allowed, yet sent the case back for a further apportionment upon property benefited. From this order the city appealed. Mrs. Dickson and Mrs. Nolan did not, but submitted to the award of damages, and lost any further right to be heard. They might have appealed and raised the constitutional question in the General Term, but since they did not, that question could no longer be answered in their behalf. The appeal by the city left open only the validity of the assessment for benefits on the outlying owners. The General Term was called upon to determine the rights of such owners as were affected by the assessment. That court appears to have agreed with the Special Term, so far at least as its opinion indicates, that there was no sufficient proof of special benefits to the outlying owners. But it went further than that, and, disagreeing with the Special Term in its construction of the charter, held that its terms gave the right to assess for benefits lands not on the extended streets, but was unconstitutional for lack of a provision requiring notice to the owners of such lands; and, as a consequence of that conclusion, ruled that no assessment could be made at all, and so reversed the order of

the Special Term permitting a rehearing. The ruling would have been needless if the court agreed with the Special Term that no benefit to outlying lands had been shown but for the consideration that on a new hearing new proof of such special benefit might be given, and the case come back dependent upon the constitutional question. In that view the court was justified in deciding it, and on this appeal it is our duty to meet it.

An examination of section 90 of the charter satisfies us that the General Term was right in its conclusion that the commissioners were not limited to an assessment upon lands bordering on the extended streets. The authority given is without limit or restriction. The words are: "They shall at the same time assess and apportion the said damages, if any, of such improvements on the real estate and against the persons benefited thereby." No arbitrary district of assessment is marked out; no limitation upon the commissioners' judgment is imposed; but any real estate benefited by the improvement is by that fact alone made liable to assessment. As a consequence of that construction it follows that while, thus far, no sufficient proof of benefit has been given as it respects the outlying property, yet on a rehearing there may be, and against that possible result the owners affected interpose their objection to the validity of the statute.

That objection is based upon the contention that the charter fails to provide for notice to the parties assessed. Section 90 requires notice to be published of the determination of the city to make the improvement and to take the lands necessary therefor. This notice is required to describe the contemplated improvement in general terms, and to notify the owners of the lands to be taken that they may file with the city clerk claims for damages, and that if such claims are made application to the Supreme Court will follow, at a specified time and place, for the appointment of commissioners. On that application the section provides that those who have filed claims for damages may appear and shall have a right to be heard. So far, the statute confines the notice to be given to those whose lands

are to be taken, and the right to be heard to those who have filed claims for damages.

After the appointment of the commissioners a second notice is required to be given. They are directed to publish a notice of the time and place when and where they will meet to make "such ascertainment and assessment." That means the ascertainment and assessment of damages to the land owners, for no other assessment precedes or has been mentioned, and beyond it the notice does not extend.

But after meeting and making the award for damages they are further authorized to assess the expense upon the real estate benefited. No district of assessment less than the city boundaries is established, and so they may assess any lands specially benefited within those boundaries. If they deem it unjust to put the whole expense upon the property specially benefited, they are authorized to put one-quarter of it upon the city at large. Up to this point the statute requires no notice to any one except those whose lands have been taken. But after the commissioners have acted, and have appraised damages upon the one hand and assessed for benefits on the other, they are required to file a report of their work with the city clerk. Then a third notice is to be given : that the report of the commissioners has been so filed ; that it may be examined by "all the persons interested;" that it will be presented at a specified time to the Supreme Court for confirmation ; and that "all persons" desiring to object may file their objections with the city clerk. The usual personal notice is also required to be given to those who have already appeared in the proceeding. On the day appointed the court is "to hear the parties in regard to said report," and may confirm or annul it, and in the latter event may send it back to the old commissioners or appoint new ones. This notice is not confined to the owners whose lands have been taken. It runs to all the parties interested, and everybody so in fact interested has been furnished ample opportunity, by inspection of the report on file, to know whether he is or is not interested, and to file objections and assert his rights if he shall so please. He may question the constitution-

ality of the act, or the fairness of the apportionment made, or may ask for the appointment of new commissioners and be heard in their selection. The statute thus gives him his day in court and full opportunity to be heard.

The case relied on by the General Term is that of *Stuart* v. *Palmer* (74 N. Y. 184). All cases are more or less liable, in the stress of litigation, to be cited as authority for what they do not hold, and the one referred to has had its share of that treatment. The facts in that case showed that there were two separate and distinct improvements, each followed by its own expenses, and its own several assessments for benefits. The first was to extend Atlantic avenue from the city of Brooklyn through the town of New Lots to the county line. (Laws 1869, chap. 217.) The second was to grade and complete the avenue thus opened. The commissioners were to be appointed without notice to anyone, either of their appointment or of the intention to make the improvement, but they were required to publish notice of the time and place of their meeting to appraise damages and assess for benefits, and to give further notice of the filing of their report and the motion for confirmation. These two notices applied only to the opening of the new street, and we held that they were ample and sufficient to sustain the statute so far as it took lands for the improvement and authorized the expense to be assessed upon the property benefited. But as to the second improvement for grading and completing the street when opened, no notice whatever of any kind nor to anybody was required to be given, and for that reason we held the statute assessing for that improvement to be invalid. The case, therefore, decides that some notice must be given, and one that is not ineffective or illusory, and also that the notices required for the first improvement were ample and sufficient. One of those notices, that of application to the court for confirmation, was in substance and effect identical with that required by the charter before us, and if adequate to support the statute in one case, is equally so in the other. The difference between the two statutes, which is apparently relied on by the respondent, is that in the Brooklyn

act notice was required, not only of the confirmation, but also of the hearing for assessment of benefits before the commissioners, while here the former notice is alone required to be given to those to be assessed. But the constitutionality of an act like that under discussion does not depend upon a double notice and a double opportunity to be heard. The legislature may grant so much if it shall choose, but is not bound to do so, and acts within its authority if it requires one sufficient and adequate notice, and not two. In the *Stuart* case, the limitation imposed was described as "some notice to the owner, or some opportunity on the part of the owner at some stage of the proceeding to be heard." Either one of the notices in that case would have been sufficient, and the most important one of the two is fully required by the Amsterdam charter. The assessment by the commissioners is proposed and merely tentative, and has no effect upon the owner or his property until final confirmation, and at that point, at that vital and essential "stage of the proceedings," the charter requires notice to the owner, and gives him an opportunity to be heard as to the assessment.

If such notice is awarded by the statute, it is of no consequence whether there is a hearing before the commissioners. *Remsen* v. *Wheeler* (105 N. Y. 579) does not decide the contrary, as the respondents contend, citing the last half of a sentence that "unless the law gave them the right to notice and an opportunity to be heard before the board which was authorized to impose the assessment, the act was invalid." That was said of a case in which there was no provision for confirmation, and the water board, which made the assessment, by its own action effectually imposed the tax. Of course, there the necessary hearing was before the board, but the corresponding hearing here is before the Special Term, by whose action alone the tax is effectually imposed. No different doctrine was declared in *Spencer* v. *Merchant* (100 N. Y. 585 ; 125 U. S. 356), nor in *People* v. *Turner* (117 N. Y. 227). On the contrary, it was especially said in the latter case that "notice by publication before the final confirmation of the assessment and

an opportunity afforded to make objections within the time specified," satisfied the constitutional requirement.

It is objected here that not only is the notice required by the act to be given after the commissioners have made their assessments, but that the outlying owners would have no reason to suspect that their lands would be affected. The last suggestion is fairly answered by the facts in the *Stuart* case. There the assessment for benefits extended a part of the way to a distance from the avenue of three hundred feet, and so, may have affected lands not on the avenue at all; here the owners assessed were a much greater distance away. Those in the *Stuart* case owning lands off of the line of the avenue might have urged, as the owners here, that they had no reason to anticipate an assessment. The difference of distance cannot vitally affect the principle. In both cases the sufficient answer is that the land owners must be deemed to have known and understood the terms of the statute, and so, the district of assessment, and if their lands were within that district they were bound to assume that they might be assessed. Here that district was the city boundaries, and everybody within it was notified of an assessment which might reach their lands, and their duty was to examine the report on file and see if it did.

That the notice followed the action of the commissioners and did not precede it is no valid objection. That is always the case in the ordinary mode of taxation, and the validity of the statute depends not on the time or mode of notice directed, but upon the fact that it directed it and furnishes an effective opportunity to be heard.

We think, therefore, that the charter sufficiently provided for a notice to all parties interested, and for a hearing upon which their rights could be amply protected.

The order of the General Term should be reversed so far as it reversed the order of the Special Term, and the order of the Special Term should be affirmed, with costs.

All concur.

Ordered accordingly.