No. 27,363.

J. T. NUTTLE, *Appellant,* v. THE WICHITA RAILROAD & LIGHT COMPANY, A. M. PATTEN and HOWARD PATTEN, *Appellees.*

SYLLABUS BY THE COURT.

STREET RAILROADS—*Operation—Construction of Wye Cannot be Enjoined as Nuisance.* Where a street railway company has a franchise to construct and operate its railway in the streets of a city, the owner of a residence adjacent to a street intersection where the defendant company set about the construction of a wye switch cannot enjoin its construction and operation notwithstanding the noise of the switch in operation and the grinding of wheels of street cars in stopping and starting may cause annoyance to the plaintiff and his family—that being merely an incident which must be endured without other compensation than the privilege of living in proximity to a public utility which is granted the use of the streets to serve the convenience of the general public.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed May 7, 1927. Affirmed.

Nuisances, 29 Cyc. p. 1186 n. 79; 1 L. R. A. n. s. 134; 20 R. C. L. 454. Street Railroads, 36 Cyc. p. 1389 n. 8.

*Robert C. Foulston, W. E. Holmes, D. W. Eaton, George Siefkin, Lester L. Morris* and *Sidney L. Foulston,* all of Wichita, for the appellant.

*Thomas F. Doran, Clayton E. Kline,* both of Topeka, and *Vermilion Harris,* of Wichita, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff sought to enjoin the defendant street railway company from constructing a wye switch at a street intersection close to his residence in Wichita.

Until shortly before this action was begun, the defendant's railway terminus in that locality was at Roosevelt street and Douglas avenue about four blocks west of plaintiff's residence. At the terminus was an old and somewhat worn and noisy wye switch.

This action was begun when the defendant had set about the extension of its railway eastward along Douglas avenue to the intersection of South Belmont and Douglas, at the southwest corner of which plaintiff's residence is located, and to relocate the old wye switch at the new terminus on South Belmont, some 25.6 feet from plaintiff's front door.

Plaintiff alleged that—

"Said material is old, worn and noisy, and that the switches and frogs of said 'Y' or 'turnout' are operated by springs, and the operation of the same is accompanied by loud and vexatious noise and clanking.

.  .  .  .  .  .  .  .  .  .  .  .  .  .

"That the maintenance and operation of said 'Y' or 'turnout' in South Belmont avenue will be occasioned by great and vexatious noise caused by the grinding of the wheels of the street cars of the defendants upon the curves of said 'turnout' and caused by the operations of said switches and frogs and the stopping and starting of said street cars in said street, . . . . will be nuisances, . . . which greatly interfere with the use and enjoyment of plaintiff's residence and home, . . . and injure the use of plaintiff's said residence as a home, and will cause plaintiff and his family great annoyance and disturbance."

Defendant pleaded its franchise to use the streets of Wichita for the construction and operation of its railway, subject to such reasonable regulations as the city government from time to time might prescribe.

Upon the evidence adduced by the parties, the trial court made findings of fact, some of which read:

"Seventh. The switches, curves and track used in the wye or turnout in Circle Drive [at Roosevelt and Douglas] are several years old and have become somewhat noisy in their operation and unless they are repaired the noise

from the use of such appliances will increase as the appliances are used; but the switches, curves and track used in said wye or turnout in Circle Drive are not unusually noisy when being operated.

"Eighth. The defendants, and each of them, intend to extend said street-car line eastward upon said Douglas avenue to South Belmont avenue and remove said switches, turnouts and appliances from Circle Drive and place same in Belmont avenue, and intend to use the same switches, frogs, curves and turnouts as are now in use in Circle Drive, after the same have been put in good condition and repair, and that in the event of such use the switches, switch tracks, frogs, curves and turnouts will be placed in South Belmont avenue immediately in front of plaintiff's property and immediately in front of the front door of plaintiff's house, and said tracks and appliances will extend in South Belmont avenue along the entire front of plaintiff's property.

"Ninth. By virtue of an ordinance of the city of Wichita, Kansas, the said defendant the Wichita Railway & Light Company is authorized, empowered and granted the right to construct, operate and maintain a system of street railways, either double or single track, over, under and along South Belmont avenue, in Wichita, Kansas, and to erect and maintain their poles, overhead wires and lines, to lay roadbeds and rails, and, in short, to do all construction necessary for the construction, operation and maintenance of their railway system upon said South Belmont avenue, including the construction and maintenance of a wye in said street.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Sixteenth. The plaintiff, in his petition, does not seek to enjoin the construction or extension of the street-car line of the defendants or the operation of street cars in Douglas avenue on the north of plaintiff's property, but plaintiff does seek to enjoin the placing, construction or maintenance of the wye or turnout hereinabove mentioned in South Belmont avenue, and particularly the use and operation in South Belmont avenue of the old frogs, switches, turnouts and curves now in use by defendants in Circle Drive.

"Seventeenth. The city engineer of Wichita, Kansas, has approved the plan for the construction of said wye in said South Belmont avenue."

Judgment for defendant was entered, and plaintiff appeals. He presents the usual assignment of errors, but the burden of his complaint is directed toward the general result—the judgment for the street railway company. This is natural enough under the circumstances. Plaintiff has a $20,000 residence in front of which this switch is to be constructed. But the switch has to be located in front of some man's property, and plaintiff has no greater claim to be freed from its noise than any other property owner. There are, indeed, some other street intersections thereabout where no fine residences are yet erected; but they will come along with the continued growth of the city, and if a noisy street railway switch is a nuisance, it would hardly be just to construct it in front of some

other worthy citizens' homesite thereabout rather than in front of plaintiff's merely because the other man has not yet got his house built. A wye switch is an incidental but essential requisite to the operation of a street railway, and the noise attendant on its operation is simply one of the inconveniences which inevitably attend the establishment of a residence in a city where street railways are lawfully permitted to construct and operate their transportation facilities.

In *Railway Co. v. Armstrong,* 71 Kan. 366, 374, 80 Pac. 946, where complaint was made of the smoke, gas and cinders emitted from railway locomotives near plaintiff's residence, the court said:

"The inconveniences and discomfitures of which the plaintiff complains are such as all persons who live along a line of railroad must endure without other compensation than the conveniences enjoyed by living in proximity to such public thoroughfare." (p. 374.)

In *Balt. & Potomac R. R. Co. v. Fifth Bap. Church,* 108 U. S. 317, 27 L. Ed. 739, 744, the supreme court affirmed a judgment awarding damages against a railroad company which had erected its engine house and machine shops so close to plaintiff's church edifice as to interfere with the religious exercises, break up its Sunday school, and destroy the value of the building as a place of public worship. But in the course of the court's opinion, Mr. Justice Field said:

"Undoubtedly, a railway over the public highways of the district, including the streets of the city of Washington, may be authorized by congress, and if when used with reasonable care it produced only that incidental inconvenience which unavoidably follows the additional occupation of the streets by its cars with the noises and disturbances necessarily attending their use, no one can complain that he is incommoded. Whatever consequential annoyance may necessarily follow from the running of cars on the road with reasonable care is *damnum absque injuria.* The private inconvenience in such case must be suffered for the public accommodation." (p. 331.)

To the same effect were: *Roman Catholic Church, etc., v. Pennsylvania R. Co.,* 207 Fed. 897, L. R. A. 1913E, 623; *Romer v. St. Paul City Ry. Co.,* 75 Minn. 211, 74 A. S. R. 455; *Matthias v. Minneapolis, St. P. & S. Ste. M. Ry. Co.,* 125 Minn. 224, 51 L. R. A., n. s. 1017; *Redd v. Cotton Mills,* 136 N. C. 342, 67 L. R. A. 983; *Hyde v. M. D. & P. Ry. Co. et al.,* 29 S. D. 220, 40 L. R. A., n. s., 48; *Church v. Railroad,* 36 Utah 238, 23 L. R. A., n. s., 860; *Wagner v. Bristol Belt Line Co.,* 108 Va. 594, 25 L. R. A., n. s., 1278; *De Kay v. North Yakima & Valley R. Co.,* 71 Wash. 648; *Taylor v. Chicago,*

*Milwaukee & St. P. R. Co.*, 85 Wash. 592, 148 Pac. 887, L. R. A. 1915E, 634.

In *Georgia Railroad Co. v. Maddox*, 116 Ga. 64, it was held:

"Where a railroad terminal yard is located and its construction authorized under statutory powers, if it be constructed and operated in a proper manner, it cannot be adjudged a nuisance. Accordingly, injuries and inconveniences to persons residing near such a yard, from noises of locomotives, rumbling of cars, vibrations produced thereby, and smoke, cinders, soot, and the like, which result from the ordinary and necessary, and therefore proper, use and operation of such a yard, are not nuisances, but are the necessary concomitants of the franchise granted." (Syl. ¶ 4.)

In *Cadwell v. Connecticut Ry. & Ltg. Co.*, 84 Conn. 450, the headnote, in part, reads:

"A street railway company, although authorized by the state to use the highways, may operate its lines therein with so little regard to the rights of others as to render itself liable in damages to an abutting property owner and resident who is injured thereby; for its franchise is not a license to do unnecessary or unreasonable injury to others. A reasonable and normal use of its property, however, although attended by more or less dust, noise and vibration, will not subject the company to liability, since these and other like annoyances are incidental and inevitable, and among the penalties which a modern, busy life imposes upon those who come in closest contact with it."

The case of *Romer v. St. Paul City Ry. Co.*, supra, is instructive. It was an action for damages against a street railway company for so maintaining and operating its car barn in a residential section of St. Paul as to constitute a nuisance which impaired the rental value of plaintiff's property. The alleged nuisance consisted of the loud and disagreeable noises caused by·the defendant so switching its cars in and out of the barn, and running them over and across the curves and over the.switch in front of the plaintiff's block; also, by the ringing of the gongs on the cars, the loud talking of the defendant's employees in charge of them, and the hammering in cleaning and repairing the cars in the street. The noises so produced were such as to disturb the rest and comfort of the plaintiff and his tenants and other property owners in the vicinity of the car barn, by keeping them awake until late at night, and rousing them in the early hours of the morning. In affirming a judgment for the street railway company, the court said:

"The discomfort and injury sustained by the plaintiff from the loud and disagreeable noises produced by taking the cars of the defendant in and out of its barn over the switches and curves at the place and at the times in question are the same, except in a greater degree, as are sustained by property owners at the

street corners where its cars are operated over curves. The acts of the defendant complained of do not constitute a private nuisance." (p. 220.)

See, also, note on the subject of nuisances caused by noise arising from lawful business in 4 A. & E. Ann. Cas. 378 *et seq.*

Plaintiff seeks to fortify this appeal by citing *Foulke v. Street Railways,* 110 Kan. 195, 203 Pac. 919. The cases are different in several important respects, the simplest being that in the Foulke case the street railway sought to build a loop track where it had no permission from the city to do so, while here defendant's right to build the switch is unassailable; and indeed while plaintiff's petition pleaded various objections to the construction of the switch in front of his residence, he now emphasizes only the defendant's proposal to use the old wye at the new location with its attendant noise and consequent disturbance of plaintiff's peace and quiet. It will be noted in the seventh finding of fact, set out above, that the trial court did not hold such a disparaging opinion of the switch as the plaintiff does.

The record contains no error and the judgment is affirmed.